Patten v. Halsted.

lute, which, by the mortgage, was defeasible. The possession of Goldtrap ever since, for near, if not quite twenty years, with the acquiescence of the lessors of the plaintiff, prevents the urging of any of those inconveniences which it was the design of the acts of 1765 and 1786 to avoid. If the cause had come on before a jury under these circumstances, I should have directed them that they ought to presume that Low, the second mortgagee, had notice of Watson's mortgage when he took his own.

On the whole case, then, I cannot allow myself to suppose the mortgage of 1760, followed by such notorious acts, ought to be considered as void against the mortgage of 1765, not followed by any except that of having it recorded ; nor do we conceive that an ejectment can be supported under such circumstances, by the second mortgagee against the first.

Judgment of non-suit.

[277]                    PATTEN v. HALSTED.

1. Where the *capias ad resp.* is in trespass, with an *ac etiam* to answer the plaintiff in a plea of trespass on the case, to his damage $5,000, the sheriff may arrest and hold to bail; and in an action for an escape he cannot be admitted to say such writ was erroneous or discharge himself by proving the entering and appearance.

2. Nor can he non-suit plaintiff in such action, on the ground that the venue was in Hunterdon, and the escape laid in Essex, when the original judgment was in Hunterdon.

3. The keeper of the gaol after a release from sheriff, is a competent witness for him in an action for an escape.

4. Where an escape is voluntary, the jury ought to find, in favor of the plaintiff, the whole amount of the original debt.

5. Where the escape is involuntary, they are not bound to make the amount of the debt the measure of damages.

6. Every escape, in the eye of the law, is a negligent escape which does not happen by the act of God or public enemies.

Patten v. Halsted.

7. In action for an escape on mesne process, the judgment against the original debtor is conclusive against the sheriff as to the amount of the debt.

This was an action on the case against defendant as sheriff, for the escape of one Freeman. The declaration charged that the plaintiff in November Term, 1790, had sued out a writ of *capias ad respondendum* against Clarkson, Freeman and others, by virtue of which Halsted, the sheriff, on the 10th of March, 1791, arrested Freeman only, and in April Term succeeding returned him in custody, and a *committitur*, &c.; that in November Term, there was a *nol. pros.* as to the other defendants, and plaintiff recovered against Freeman the sum of £1526 19s. 6d. for his damages, costs and charges; and that afterwards the defendant suffered Freeman to escape.

There were two counts in the declaration, one for a voluntary, and the other for a negligent escape.

The cause was tried at bar.

After having proved the writ, the arrest, the judgment roll, and the escape, plaintiff rested his cause.

*Aaron Ogden,* for defendant, moved for a non-suit, on the following grounds:

1st. That special bail could not be required in the action against Freeman; and the sheriff, therefore, had a right to discharge him from custody on the entering of an appearance, which had been done. The writ in this case was to answer a plea of trespass on the case, and agreeably to the practice in the English courts, which has ever been adopted as the rule for our government, unless expressly altered or repealed, special bail is not required except in actions of debt. 3 *Bl. Com.* 292. In the present case the entering an appearance was sufficient. 3 *Bl. Com.* 290. The *ac etiam* clause in the *capias* goes no further than it would have gone had that been omitted; it is *ac etiam* to answer to the plaintiff in a plea of

Patten v. Halsted.

trespass on the case to his damage £5,000; and a clause of this de-[278]-scription, so extremely loose and indefinite, would not warrant the sheriff in holding Freeman to bail. 13 *Car. II., st.* 2, *c.* 2; *Highmore* 11, 12, &c.

If, therefore, the writ was erroneous, and Freeman himself might have been relieved from the arrest, the sheriff was entitled to assume the risk himself, to release the prisoner, and to avail himself in his defence of every defect which the person arrested would have been permitted to urge against its sufficiency. The statute of Charles is directory to the sheriff, and from it he was to learn the course to be pursued, and to judge of the legality of the arrest.

2d. This action is local in its nature, and the escape having been laid and proved if anywhere, to have occurred in Essex, the venue is erroneous. 1 *Siderfin* 364; 87 *Tr. per Pais* 57; *Impey's Pr.* See *Wright* v. *Martin, Styles* 107. And where the action is local, and the venue laid in a wrong county, the court will abate the writ or non-suit the plaintiff. 1 *Com. Dig.* 163. See also *Richbell* v. *Goddard, Cro. El.* 271, 625; *Bull.* 67; 1 *Levinz* 114; 2 *Roll. Abr.* 602.

*R. Stockton, contra,* cited 1 *Crompt.* 109; *Salk.* 670, to prove that when a recovery is in one county and the escape in another, the venue may be laid in either. See the case of *Bogert* v. *Hildreth,* 1 *Caines* 1. Indeed the cases cited do not prove that the action could not be brought in a different county from that in which the escape happened; they only go so far as to prove that the court will, on application, change the venue to that county. But the invariable rule of law was, that where material facts exist in different counties, the court will not alter the venue from that in which the plaintiff has thought proper to lay it. (*a*)

As to the other objection, he contended that the sheriff was obliged to look only to the writ placed in his hands, and

(*a*) In coroboration of this doctrine, see *Cole* v. *Goring, Barnes* 477; *Belshaw* v. *Porter, Ibid.* 488; 4 *Burr.* 2452; *Allen* v. *Griffith,* 3 *T. R.* 495; 1 *Cain* 122, (*new edit.*); 3 *Ibid.* 95, 139; 2 *Johns.* 374; *Dougl.* 262; 1 *Tidd's Practice* 545; 1 *Sellon* 247.

Patten v. Halsted.

to comply with its directions; if defendant had been improperly arrested, let him make his application to the court in a [279] regular manner for his discharge. It was not to be endured, that the sheriff was to assume upon himself an authority to decide in what cases bail was required, and when it might be dispensed with. His own interests were in no degree jeopardized by executing the arrest, and it was a business in which he had no concern, and no right to interfere. Nor was it a matter of which the sheriff could avail himself, that an appearance had been entered. That was a proceeding in the court under his own eye, and the legal operation of it could not be inquired into and determined by the sheriff. He contended, that if Freeman was arrested without sufficient authority, or upon defective process, an application should have been made to the court to have him discharged on a common appearance. *Nichols* v. *Dallyhunty*, *Barnes* 79 ; *Taylor* v. *Baker*, 2 *Mod.* 214.

The court overruled the motion on both grounds. On the question as to the right of taking bail, KINSEY, C. J., observed, that the writ was directory to the sheriff, and the *ac etiam* clause inserted for his guidance. That when the writ was put in his hands, he was not to determine whether it was a case in which special bail was required ; he was bound to imprison the defendant, unless sufficient bail was found.

The ground of defence adopted by the defendant, was to prove that there was no want of attention on his part ; that every precaution consistent with humanity, and sometimes even bordering on rigor, had been adopted with regard to Freeman. This was made out by several witnesses, and it was proved that the escape was occasioned by circumstances not to be foreseen, and which could not be prevented by even more than ordinary exertions and caution.

On the trial, John Gifford was offered as a witness on the part of the defendant, and objected to by Stockton, on the ground of his being the gaoler and sheriff's deputy, and con-

sequently interested to exonerate himself, as well as Halsted, from responsibility. *Cowp.* 197, *Clarke* v. *Shee and Johnston;* 4 *Term Rep., Green* v. *New River Company.* A release, however, from the sheriff being produced, he was admitted by the court.

[280] The court, in their charge to the jury, said that there appeared to be no evidence warranting a suspicion that the escape was collusive or voluntary, so far as it was within their authority to express an opinion on the subject. This, however, was a subject exclusively for the decision of the jury, who were to consider and weigh all the circumstances that had been proved. If they should be of opinion that the escape was connived at by the sheriff, it was their duty to find the whole amount of the judgment against Freeman as the damages.

On the count for a negligent escape, the court said that every escape not happening by the act of God, or the public enemies, was, in the eye of the law, considered a negligent escape. The law admits no other excuse, and if the prisoner is rescued by a mob, whose power the sheriff is unable to withstand, even with the aid of his *posse comitatus,* yet he is answerable for an escape ; he must keep him, at all events. The reasons are obvious. If it were otherwise, the creditor would be exposed to imposition and hardship. He must be constantly watching the conduct of the sheriff, and guarding against any collusion between him and the debtor ; always liable to deceptions, which it would be impossible to thwart in their progress, or to unravel after their accomplishment. It does not, therefore, lie in the mouth of the sheriff to say that the gaol was insufficient, or that he took all possible care ; that the prisoner escaped by means of a false key, or that he was rescued by a mob. He knows at the time of his election, before he enters upon the execution of his office, upon what terms and conditions he is to hold it, and how far the law makes him answerable for any accidents that may occur. He can examine the gaol, but if, after having done

what it behooves a prudent man to do, he takes the office and enjoys its benefits, he must submit to the inconveniences, and be answerable for escapes, however innocent he may be of any connivance. *O'Niel* v. *Marson,* 5 *Burr.* 2812.

In cases, however, where the action is for a negligent escape, the jury are not bound to make the original debt the measure of damages against the sheriff. They may take into consideration the circumstances of the case, and find such a measure of damages as the more or less favorable view of [281] the facts which appear in evidence will warrant. On the point, therefore, of the *quantum* of damages in this case, it is a matter upon which the jury are to exercise their own discretion and judgment, and the court ought not, nor will they, direct you.

The jury found a verdict in favor of the plaintiff for £15 15 6*d.* 6*s.*

It has been thought advisable to insert at this time the decision of the court upon a motion for a new trial in this case in September Term, 1795, it being more important to preserve the connection between the different branches of the cause than to adhere to an unnecessary exactness in preserving the chronological arrangement.

A rule to show cause why a new trial should not be awarded had been obtained in May, and came on for argument in September Term, 1795.

In support of the motion, it was argued : 1st. That the plaintiff had proved no debt due from Freeman on the *capias* upon which he had been committed, except by the judgment which had been subsequently obtained against him. This was a proceeding after Freeman's arrest, after the sheriff became bound to keep him securely, and, as against the sheriff, was no evidence, being *res inter alios acta.* It was stated as the law, that in an action against the sheriff for an escape, on mesne process, the plaintiff was obliged to prove his cause of action, and make out his whole case, in order to charge the

sheriff.   The cases of *Gunter* v. *Cleyton*, 2 *Lev.* 85 ; *Alexander* v. *Macauley, &c.*, 4 *T. Rep.* 611, were cited, in both of which non-suits had been entered for failure in proving the original debt.

2d.  That the court misdirected the jury in stating that the insufficiency of the gaol was not a bar to the action.   In England there can be no doubt that the law is as stated by the court; but there the sheriff provides the gaol as well as keeps it, and in case of its weakness, the original and real cause of the escape is his own negligence and inattention. In this country, the county is bound to build the gaol and keep it in repair, and the sheriff should not be made answera-[282]-ble for their remissness in preparing a suitable place for the reception and safe custody of prisoners.

It was further stated that in this case it appeared on the trial that Halsted had made a regular protest against the sufficiency of the gaol.   The distinction relied on between the law of England and this country, was illustrated by reference to the case of *Clark* v. *Litchfield*, in Connecticut, *Kirby* 318. (a)

*Stockton, contra,* in answer to the first objection, said that the judgment against Freeman was the best evidence that could be produced of the existence of the debt; and in an ac-tion for an escape, on mesne process, after judgment entered against defendant, it was good evidence against the sheriff to prove the *quantum* of damages.   That the rule, *res inter alios acta*, was altogether inapplicable to this case, where there was a privity between Freeman and the sheriff, where the sheriff was placed precisely in the situation of the original debtor, and the same evidence was equally conclusive against both. Whatever testimony could be admitted in an action against Freeman, was equally so against the sheriff in an action for an escape.   According to the doctrine contended for, the whole action between Patten and Freeman is to come again under the investigation of the court and jury, and to receive another trial.   The cases that have been cited are all good law and

(a) See, also, 2 *Swift's System* 213.

Patten v. Halsted.

of unquestionable authority; the only misfortune is that there exists no analogy between them and the present case. There the suits were brought before a recovery in the original action, and where, consequently, as there was no judgment, the plaintiff, in his action against the sheriff, was obliged to go into proof of an actual and subsisting debt. Unless there was evidence of a debt, the jury could not say that the plaintiff had sustained any damage by the escape.

2d. The distinction attempted to be drawn between the different extent to which the sheriff's responsibility ought to be carried in this country and in England, from the circumstance that with us the county is obliged to build and repair the gaol, is without foundation; and this is the first time that [283] it has been thought of. The sheriff was bound to keep his prisoners safely, and if he suffered any injury from the insufficiency of the prison, it was his own loss, and a question between him and the county; but it cannot affect the interests of the plaintiff, who has a right to look immediately to him in case of a loss by an escape.

PER CUR. Both the objections are unavailable on the present occasion. The case from Kirby is inapplicable, because grounded on a special act of the legislature, which cannot be extended to this state. Until our own legislature change the common law in this particular, we must adopt it as the rule for our government; and by that the sheriff is answerable for an escape under circumstances like the present.

The judgment also was the best possible proof that could have been produced; it was conclusive against Freeman, and the sheriff can stand in no better a situation.

Rule discharged.